SEIN, DEMANDANTE Y APELANTE, *v.* GONZÁLEZ ET AL.,
DEMANDADOS Y APELADOS.

APELACIÓN procedente de la Corte de Distrito de Aguadilla en incidente sobre memorándum de costas y desembolsos.

No. 1715.—Resuelto en marzo 5, 1918.

JURAMENTO—OBJECIÓN—FALTA DE LOS REQUISITOS DE LEY.—Un juramento en el que se omiten por completo todos y cada uno de los detalles prescritos por la ley respecto a la identidad del declarante, no debe recibir, como regla general, la sanción de una corte sentenciadora si se llega a hacer oportuna objeción.

ID.—IDENTIFICACIÓN DEL JURAMENTO.—El que un abogado como funcionario de la corte presentara un *affidavit* dando a entender que lo hizo por él mismo, como abogado en el caso, y que lleva su firma, de no ser en sí mismo técnicamente suficiente para suplir la falta de la debida indentificación en el juramento, fué cuando menos suficiente para satisfacer al juez sentenciador, como cuestión de hecho y fuera de toda duda razonable en cuanto a la autenticidad en la forma.

LEYES—DIFERENCIA ENTRE EL TEXTO INGLÉS Y EL ESPAÑOL—REGISTRO DE AFFIDAVITS.—La versión española de la ley de 1908 ampliando el artículo 2 de la ley estableciendo un registro de *affidavits* o declaraciones ante notario y otros funcionarios, de mayo 2, 1906, por estar más de acuerdo con el desenvolvimiento histórico del concepto allí expresado, y porque no violenta en forma alguna la ley de 1903 enmendada en 1910, debe prevalecer sobre el texto inglés.

Los hechos están expresados en la opinión.

Abogado del apelante: *Sr. José D. Rodríguez.*

Abogados de los apelados: *Sres. Francis & Soto.*

EL JUEZ ASOCIADO SR. HUTCHISON, emitió la opinión del tribunal.

Contra un memorándum de costas y desembolsos se for-

muló oposición en la corte de distrito fundada en los siguientes motivos:

"1. Que dicho memorándum de costas y desembolsos es nulo, por no ajustarse a ley.

"(*a*) Porque el juramento no se ajusta a lo prescrito en la sección 3 de la ley sobre *affidavits,* aprobada en 12 de marzo de 1908.

"(*b*) Porque los abogados del reclamante en este caso son Francis & Soto, siendo dicha sociedad de abogados compuesta por Juan B. Soto y Hugh R. Francis, y el memorándum ha sido jurado por el señor Soto ante el señor Francis o sea, los abogados de los demandados han jurado ante sí mismos, lo cual vicia de nulidad dicho juramento.

"2. Que los honorarios para abogado en dicho memorándum son excesivos.

"(*a*) Que la tercería interpuesta por el demandante lo fué para anular un embargo para asegurar Jesús María González una suma de seiscientos cuarenta dollars que le adeudaba Rafael García Soler. Que los demandados alegaron una excepción previa que fué declarada sin lugar y que posteriormente contestó la demanda y asistió al juicio, el que se celebró sin dificultad y rápidamente.

"(*b*) Que los honorarios cargados son doscientos dollars o sea casi una tercera parte de la suma defendida por los Sres. Francis & Soto y por tal motivo la estimamos excesiva."

La objeción hecha bajo la primera subdivisión del primer fundamento está bien fundada. El juramento en cuestión dice así:

"Suscrito y jurado ante mí hoy día seis de julio de 1917, en San Juan, P. R. (Firmado) Hugh R. Francis.—Notario Público."

La sección 3 de la ley de 1908 prescribe una forma sencilla, fácil de seguirse y que contiene ciertas salvaguardias esenciales respecto a la identidad del declarante y aunque quizás sería suficiente si se cumple sustancialmente con el estatuto, un juramento en el que se omiten por completo todos y cada uno de los detalles prescritos por la ley no debe recibir la sanción de una corte sentenciadora si se llega a hacer oportuna objeción. 2 C. J. 360; 1 R. C. L. p. 769, sec. 14.

En el presente caso, sin embargo, el declarante era un abogado bien conocido que representaba a una de las partes, y el que él como funcionario de la corte presentase un *affidavit* dando a entender que lo hizo él mismo como abogado en el caso y que lleva su firma, de no ser en sí mismo técnicamente suficiente para suplir la falta de la debida identificación en el juramento, fué cuando menos suficiente para satisfacer al juez sentenciador, como cuestión de hecho y fuera de toda duda razonable, en cuanto a la autenticidad de la firma. Además el memorándum sólo contenía dos partidas, a saber, por derechos del secretario, $5, y por honorarios de abogado, $200, respecto de las cuales ni el demandante ni la corte podían haber sido descaminados o engañados. Dadas las circunstancias del caso el error no era perjudicial.

Los autos no nos revelan hechos suficientes para que esta corte pueda entrar a considerar la segunda subdivisión del primer fundamento de oposición. Sugerimos, sin embargo, que esta cuestión muy bien puede evitarse en la práctica. Respecto a la conveniencia de adoptar la sugerida línea de conducta, véase 2 C. J. 330; 1 R. C. L. 763, sec. 6.

El abogado del apelado niega la afirmación que se contiene en el segundo fundamento de oposición en cuanto al importe de la reclamación envuelta e insiste en que la suma cuyo cobro se interesa y que el montante para cuya efectividad de la sentencia se trabó embargo es de $3,000. Solamente estas manifestaciones contradictorias es lo que tenemos ante nosotros para basar una opinión en cuanto a si es o no razonable la suma concedida por conceptos de honorarios de abogados y por tanto no podemos decir que la corte inferior abusó de su discreción.

El apelante insiste también en que el *affidavit* otorgado ante un notario es nulo.

"El notario es, según lo define el artículo 1º. de la Ley Notarial Española, el funcionario público autorizado para dar fe, conforme a las leyes, de los contratos y demás actos extra-judiciales."

La sección 16 de la propia ley disponía "que el ejercicio del cargo de notario era incompatible con todo otro cargo que llevara aneja jurisdicción,    *    *    *."

Históricamente estos dos artículos no sólo sirvieron para limitar el alcance y extensión de las facultades notariales sino que representan una tendencia claramente definida para relevar a ciertos funcionarios judiciales o cuasi-judiciales, de diversas funciones ministeriales, el ejercicio de las cuales se estimaba como si se traspasara la órbita del notario "contractual" para distinguirlo del "gubernativo" y del "judicial". Fernández Casado, tomo 1, de su Tratado de Notaría, Títulos I al III.

Esta tendencia hacia una jurisdicción exclusiva en favor del notario parece haber sobrevivido al cambio de soberanía y ha quedado acentuada por la palabra "único" adicionada en la sección primera de la "Ley para regular el ejercicio de la Profesión Notarial en Puerto Rico." (Leyes de 1906, p. 142), la que reza como sigue, (la bastardilla es nuestra):

"El notario es el *único* funcionario autorizado para dar autenticidad, conforme a las leyes, a los *contratos y demás actos extra-judiciales* que ante su presencia se realicen."

Antiguamente, al igual que ahora por disposición expresa del Código Civil estaban prohibidos los juramentos en los contratos y los notarios carecían de facultades para administrarlos, así como para tomar *affidavits;* pero aquí también se halla una disposición para insistir en la ampliación de facultades en este sentido, mediante la intentada eliminación del juramento en los procedimientos judiciales al igual que en la ley referente a los contratos, acompañada por la ulterior innovación de reducir a escritura pública las declaraciones de los testigos o de aquellos que pueden llegar a serlo en una causa en forma de "información testifical" ante notario. Fernández Casado, Tratado de Notaría, tomo 1, p. 600, sección 703.

En. el 1903, (véase Leyes de 1903, p. 38 y 39) la Legislatura expresamente confirió a los notarios la facultad de administrar "todo juramento, declaración jurada, o afirmación que sea necesaria o que la ley requiera."

Como lo indicamos en el caso de *López* v. *Meléndez,* 22 D. P. R. 156, 166, la sección 4 de la "Ley estableciendo un registro de *affidavits* o declaraciones ante notarios y otros funcionarios" aprobada en marzo 12 de 1908, p. 39 (sec. 18 de la Compilación, p. 6), después de hacer constar que "los notarios, los jueces del Tribunal Supremo, los jueces de las cortes de distrito, y de las cortes municipales, y jueces de paz, el Secretario de Puerto Rico y los otros jefes de los departamentos ejecutivos, podrán autorizar los *affidavits* o declaraciones, añade una cláusula en la que se dispone en inglés (la bastardilla es nuestra), que "los notarios, sin embargo, podrán autorizar dichos *affidavits* o declaraciones *solamente* cuando se refieren a hechos, actos o contratos de mero interés particular," y en español, que *"solamente* los notarios podrán autorizarlos cuando se refieren a hechos, actos o contratos de mero interés particular." ·

Pero, como también se indicó en el caso de *López* v. *Meléndez,* en el 1910 la legislatura mediante una enmienda al efecto amplió y volvió a redactar el artículo 2 de la ley de 1903, la que, en todo cuanto sea pertinente a la cuestión envuelta en este caso, se transcribe a continuación:

"Artículo 2.—Todo juramento, declaración jurada o afirmación que sea necesaria o conveniente o que la ley requiera, podrá prestarse en Puerto Rico y expedirse una certificación al efecto, ante cualquier magistrado de la Corte Suprema, o ante cualquier juez de una corte de distrito o ante cualquier secretario de cualesquiera de las cortes antes dichas o ante cualquier juez de paz o municipal, o ante cualquier notario, o ante cualquier Comisionado de los Estados Unidos para el Distrito de Puerto Rico; * * *."

En el caso que se acaba de citar sostuvimos que la ley de 1910, en cuanto a la facultad de un juez municipal para to-

mar un *affidavit* de diligenciamiento de una citación, como la última palabra de la Legislatura sobre esta materia, era la ley a que había que atenerse para resolver cualquier duda que surgiera de la discrepancia existente entre el texto inglés y el texto español de la ley de 1908.

La versión española de la ley está más de acuerdo con el desenvolvimiento histórico del concepto allí expresado y no violenta en forma alguna la ley de 1903 según fué enmendada en el 1910. La cláusula tal como se lee en inglés, mutilaría la ley últimamente mencionada en cuanto se refiere a los notarios y hasta ese extremo burlaría de una vez el evidente propósito de la Legislatura tal cual fué expresado tanto con anterioridad, como con posterioridad a la citada ley de 1908, propósito que por cierto está de acuerdo con la práctica americana moderna y con las aspiraciones de la profesión notarial dentro del derecho español. Cualquiera que fuera el motivo o la verdadera significación de la cláusula en cuestión, en cuanto a este respecto no tenemos necesidad de excogitar por ahora, es difícil de concebir que, por el hecho de que continúe en pleno vigor y efectos la ley de 1908, con la sección 4 de la misma inclusive, la Legislatura tuviera la intención en 1910 de negarle al notario, hasta el extremo indicado en el texto inglés, de esa sección, las amplias facultades expresamente conferídasle.

Es de confirmarse la orden recurrida.

*Confirmada la orden recurrida.*

Jueces concurrentes: Sres. Asociados Wolf y del Toro.

El Juez Presidente Sr. Hernández y el Asociado Sr. Aldrey no intervinieron.